Good morning ladies and gentlemen. We are honored to have with us this morning the Honorable D. Benson, District Judge from the District of Utah. We are very pleased to have him sit with us and we thank him for doing so. We have six argued cases this morning, two similar trademark cases, two veterans cases, a patent case from the district court and a government employee case. The latter and one of the veterans cases are being submitted on the briefs and not being argued. So our first case is IN RE THE CITY OF HOUSTON, 2012, 1356. Is it a case of first impression because the statute is very clear? It is a case of first impression because there is no other case that has ever addressed this issue, Your Honor. And in this particular case, the City of Houston is seeking to register its own official city seal as a trademark. But that's prohibited by the Lanham Act. Well, our position, Your Honor, is that construing Section 2B of the Lanham Act according to a plain language leads to an absurd and unusual result that Congress could not have intended. And that result is specifically that a statutory amendment to one section of the statute, the definition section, that was intended to allow government entities to register their trademarks, in other words, their source identifying symbols, instead in another section of the statute, Section 2B, prevents them from registering their most important source identifying marks, which are their official insignia. But if Congress writes inconsistent statutes all the time, that's why we're here. What would we do if they didn't? I understand that, Your Honor, but we believe this is an exceptional circumstance. Why would one section of the statute grant these rights when another section of the statute restrains them in arguably the most important way, when there's no explanation in the legislative history of why this happened? It's an unusual and exceptional circumstance, and I think it requires some further analysis. What's the exceptional circumstance? Imagine, Your Honor, if, according to the Lanham Act, Coca-Cola was prevented from registering its Coca-Cola logo. But that's not your case. You're not arguing for Coca-Cola. That's true, Your Honor. The exceptional circumstance in this case is that the city of Houston, its most important city, and I see a white truck passing on the street, and it has the city of Houston seal on the front. That leads me to believe that that truck is authorized to repair my sewer line or repair the street. And the city of Houston ran into problems because there were people who were using the city seal in ways that suggested that they were affiliated with the city or sponsored by the city, but they weren't. They were soliciting Social Security numbers. Let's explore that a little bit, counsel, because that's a question that I didn't see addressed directly in the briefs, and that is if some purveyor of hot dogs in the city of Houston wants to sell something the purveyor calls Houston hot dogs and puts up a big sign using the exact emblem or logo, whatever you want to call it, of the city of Houston, can that be done? The problem would be, Your Honor, if that entity was suggesting that it was affiliated with the city or sponsored by the city. Yeah, that's clearly the implication that this purveyor wants to get across, that these are really city hot dogs. Right. And if someone would buy those hot dogs based on the belief that the city of Houston... Can that be done with impunity, or does the city have some recourse under current law? Under current law, I guess the city could sue under other sections of the Lanham Act, but the problem is the benefit of having a federal registration... No, no, don't go there. I understand the benefits of federal registration, but I want to be clear about that issue. That could not really go on without the cities having recourse. Isn't that true? That's true. There are other ways, not as good, but other ways that the city would have recourse. That's correct. Okay. I wanted to be clear on that point. Thank you. Okay, so in our brief, we discussed the interrelationship between Section 2B and Section 45 of the Lanham Act and how the two sections need to be read together to understand the meaning of applicant. When the Lanham Act was first passed in 1946, Congress amended the definition of applicant to include not just natural persons, which is what was in the definition before, but also juristic persons. And under this amendment, it gave government entities the right to register marks. So under 45, government entities were granted all the benefits and privileges of the Lanham Act. You know, it's a broadening type of statute. But under 2B, they were denied the right to register their most important source identifying marks. The question I have is what else would they want to register if the bill was to register their source identifying mark? You get tremendous benefits on one hand, and they have been greatly scaled back on the other hand. And our issue is there's no discussion at all in the legislative history of the link between these two sections or the implications of these competing mandates in the statute. We find that to be a problem. When we look to the other parts of the legislative history for policy discussion, to see if this type of reading of 2B follows the general policies of the Lanham Act, we look to statements made by Representative Lanham himself, who was the sponsor of that. And we put his quote in our brief. It's page 12 of our reply brief. He said, the basic purposes of trademark legislation are twofold. To protect the public so that they can be confident, so to speak, that when they're buying something, it's coming from the source identifier. And to protect the public so that the public is not taken advantage of by pirates and cheats. Mr. Chrétien, one of the first signs, as far as I'm concerned, of a weak argument on the statute is to argue legislative history. It's almost a concession that the statute is against you. Your Honor, when I first read Section 2B, the wording is plain. And I would agree with you. On first glance, I looked at it, and I thought it meant one thing. But I think you have to dig deeper, and you have to look and see if that's what Congress meant. Don't we hear from the Supreme Court all the time, if the meaning is plain, we apply the statute? I hear that noise in my ear most mornings when I wake up. What shall I do about that? I also look at Supreme Court cases to try to figure that issue out, Your Honor, and they seem to me to say different things. There are lots of opinions where they say the words mean what they mean. I read dissents where they say, well, maybe not. And I see flip-flops. I see opinions where they say the words maybe don't mean what they say. And I see dissents where they say, oh, no, they absolutely mean what they say. If we're looking for clear guidance, I don't know if we have any on that issue in the Supreme Court. Okay, so back to Representative Lanham's statement. So he said that the goal is to protect the trademark owner and to protect the public. Is preventing the government entity from registering its insignia protecting or helping the mark owner? No, it's not. I mean, it's obviously preventing it from registering its mark. Is it helping the public? No, I mean, it's allowing cheats and pirates and counterfeiters and all these other folks to use the marks with impunity. But for the other remedies that we discussed earlier, Your Honor. So I don't think, if we're looking to the legislative history for something, I don't think the basic policy objectives of the Lanham Act are met. Now, I'd like to address one of the arguments that the director set forth in his briefing about – they speculated that perhaps a reason why the marks wouldn't be allowable is that it somehow cheapens these official insignia, that they're emblems of authority, not subject to trademark protection. And I think, based on my reading of the cases, the trademark office has struggled with this. I mean, there's only been one case that kind of addressed this issue. It was from the 1960s. It was from the TTAB, Interim Department of the Interior. And in that case, what they said was, when trying to read 2B, governments cannot register their symbols of national authority, but they can register department insignia that identify service or facility of the government. So what's been the result of that ruling? Okay, we now have police departments that register the officers' badges and the shields on their sleeves as trademarks. Fire departments do the same thing. They register their badges and their shields as trademarks. The branches of the U.S. military have registered their symbols, their flags, their shields as trademarks. These are all on the trademark registry. You know, I spent six years on Capitol Hill and just wondering why you're not there making this argument. Wouldn't this be better done there? It sounds like you want to change the legislation, which seems quite plain on its face. Sure, and there's two reasons, Your Honor. First, and those efforts aren't underway, by the way. But the reason we're here today specifically is because, for one, this doctrine of absurd results that's in the case law. Can't Congress pass absurd laws? Congress may pass absurd laws from time to time. But if an entity is affected by that absurd law, they have the right to go to the courts. And under the case law, absurd results, if there are absurd results, the courts can take a second look at the statute and see if that's true. You're not suggesting that courts tend to be more rational than Congress, are you? Not at all. I would hope not. Not at all. All I'm saying is that, to your question, there's a judicial remedy available. If we'll buy it. Exactly. And second, we're representing a client. And the client is suffering harm and disadvantage. In other words, an absurd result is a result that doesn't comport with all of the goals of an interested party. No, an absurd result under the case law, as I understand it, is that there's a result that Congress could not have intended. The legislative history shows that Congress could not have intended the result that's in the plain language of the statute. There are cases that say that this is an objective that can be looked at and remedied. You're into your rebuttal time. You're free to use it or to save it. I'll save it. All right. Ms. Hebert, CTO. May it please the Court. Your Honor, the statute is against them here, and it means only one thing. If the matter that is thought to be registered, a municipality's official insignia, is the subject of the application, it can't be registered. That's what 2B says. If the mark consists of or comprises the flag, coat of arms, or official insignia of a municipality, it cannot be registered. We have to refuse it. It's very clear. It's unambiguous. Section 2 speaks to the nature of the mark. It says, no trademark shall be refused registration on account of its nature. It doesn't care who's applying. It doesn't care what it's being applied for. So Houston's argument about applicants have no application here. In other words, you're saying the specific evidence over the general. No, I'm saying that the term applicant appears in the preamble of Section 2. It's not even in 2B. And so what they're really asking you to do is say that it can be an applicant for something, but not for other things. But that's a general provision, so I'm happy to go out here. Because 2B is rather specific compared with the general statement you just rendered. Correct. It is very specific, and it says that no one can register official insignia for anything. It's true that governments became eligible to register marks in 1946 under the Lanham Act, but the fact that they couldn't register marks before has no bearing on what Section 2 means. Again, it's about the nature of the mark. So whoever was eligible in 1905 to register marks couldn't register them. No one could. Whoever was eligible in 1946 to register marks can't register official insignia. No one can. The provision actually is protective of the municipalities, because it's not just saying you can't register them. Now, Gilman says there are about 13 marks of municipalities that have been registered. Well, Your Honor, the board address says they're not properly of record, so it's just a list. We don't really know what they are, the official insignia. Well, and Ms. Steber, welcome to the Court. With all due respect, yes, there's a procedural issue about whether they file the papers correctly, but let us concede for discussion purposes that, in fact, the Patent and Trademark Office has approved some 13 of these municipal trademark cases. Isn't there some obligation on the government generally to be consistent in its treatment of applicants before it? And if the pattern has been to approve it, why are you singling out the City of Houston and, in 15 minutes, the District of Columbia? Well, Your Honor, we're not singling them out. And, yes, consistency is certainly a goal of the agency. But as this Court has often recognized, the board and this Court are not bound by the decisions of examining attorneys. This is a case of first impression where it was the first time the board was called upon to construe this statutory provision. Let's assume we agree with you, hypothetically. What happens to those other 13 cases that never came up to be decided at the appellate level? They remain on the register. Again, we don't know if they really are the official insignia or not. If they are, even if the marks shouldn't have been registered, it doesn't mean that the City of Houston or the District of Columbia get their registration. I want to flip it the other way. Could somebody now challenge those earlier registrations if they wanted to? They could always be challenged. Either how, by a cancellation or as a defense in an infringement action? Presumably both. It would be, again, effectively cancellation to say that you shouldn't have your registration because the subject matter of the registration is your official seal. It's like an invalid patent. There are a fair number out there. Correct. And unchallenged, they don't survive. Right. It's no different than if the office registers a term that turns out to be generic. But maybe there wasn't evidence before the agency that shows that. Someone can go to court and challenge it and say that shouldn't have been registered as generic. So there's always that basis to invalidate registered marks. But, again, the office does not have a policy of registering official insignia. Its policy is the exact opposite, and it's also stated in the TMEP. And it says exactly what the board said here, that the prohibition against the registration of official insignia is absolute. It doesn't matter who the applicant is. Congress made a policy choice when they enacted 2B, and it's for the court to apply the law as Congress wrote it. If the policy has changed as to why official insignia shouldn't be registered, then Houston is free to go to Congress to ask them to change the law. And it sounds like that's what they have done. And, Judge Plager, just to respond to your question about the hot dog purveyor, yes, there certainly are other mechanisms in the federal registration that allow the city to stop others from using their insignia in ways that enslave the public. So you agree with him that the city has recourse now, is that correct? Correct. Under the law? Correct. They have recourse through Section 43 of the Land Act. They also have recourse that ordinary trademark applicants really don't have because they're a government entity. Presumably they could pass an ordinance or take some other measures that would prevent the unauthorized use of their seal. And also, the Trademark Act allows governments to register marks. It just doesn't allow them to register official seals. So, for example, lots of cities have other marks that they use to promote tourism. If we look at the city of New York, they have their I Love New York slogan and the apple. They can register that. They can't come in to register their official seal. The Act says they can't do it, and no one can. Unless the court has any further questions, I'm going to yield my time. No one gets penalized for not using all their time. Thank you, Ms. Eagle. Mr. Crepean has a little rebuttal time. Your Honor, I don't think I'm going to need all my time. I just have one point I'd like to make. I'd like to touch on the issue of who would benefit and who would be harmed in the directly proposed construction of 2B. Obviously, if Houston is going to be harmed, it will not be able to register its mark. Obviously, there are other government entities who are looking at this case for guidance as to whether they'll be able to try to register their mark. They'll be harmed. No registrations for them. No, I'm not as knowledgeable as my two colleagues here on trademark law, I'm guessing. But tell me why it's so important for the city of Houston to want to trademark its official seal. In looking at these briefs, I've never understood that. Why is it? Do you want to put the emblem on coffee mugs and plates and souvenirs or T-shirts? What is it? Not necessarily. And why do you need trademark in order to even do that? Here's one example. Let's say someone is producing counterfeit products. You can go to the U.S. Customs, and if you have a federal trademark registration, you can put it in their registry, and then they can monitor counterfeit products coming into the country at the U.S. Customs and Border Protection and stop counterfeit from coming into the country. That's a benefit that the city of Houston would not have. Is this currently a problem for the city of Houston? I don't know the answer to that. But they won't do it if you don't have a federal trademark? That is my understanding. Every time I've tried to do one, they've asked, do you have federal trademarks that we can register, and I've had to submit the list of trademarks to them. And that's how they knew which marks to produce. That's my understanding. There are also other benefits to having federal registrations that people who do not have them cannot take advantage of. They're listed in the statute or in the regs. So, back to who's benefited and who's harmed. It seems as though the only party that would be not harmed and benefited from the proposed construction of a director is the infringer, if he continues to infringe and create confusion in the marketplace. And they win in this situation if we receive the word director once it's read. And we would argue that this can't be the right answer. This is not the proper interpretation where the bad guy wins under the statute. That's just, that's absurd. And so, a felon is respectfully requested to be interpreted to allow a felon to register a sufficient insignia and that the application be remanded to the trademark examiner with instructions appropriate. Thank you, Mr. Quicken. The case is submitted.